COLEMAN *v.* LARSEN.

1. Specific Performance — Fraud Not Found in Sale of Lake Frontage.

In a suit by the vendor for the specific performance of a contract to purchase lake frontage, the finding of the court below that no material misrepresentations or fraud was practiced, *held*, justified by the record.

2. Same—Land Contracts—Equitable Remedy Not Refused Because Value May be Less Than Estimated.

Where a contract for the purchase of lake frontage, the value of which was more or less speculative, was voluntarily entered into, the vendor should not be refused specific performance and relegated to an action at law for the recovery of damages because the property may have had less value than purchasers estimated it had.

Appeal from Grand Traverse; Gilbert (Parm C.), J. Submitted June 7, 1928. (Docket No. 44, Calendar No. 33,739.) Decided July 24, 1928.

Bill by John A. Coleman against Axel M. Larsen and James J. Fagan, copartners as J. J. Fagan & Company, for specific performance of a land contract. From a decree for plaintiff, defendants appeal. Affirmed.

*George H. Cross* (*John J. Tweddle,* of counsel), for plaintiff.

*Joseph T. Riley,* for defendants.

Sharpe, J. The plaintiff, a resident of Kalamazoo, is the owner of a tract of land, consisting of 143 acres, which has a frontage of about 1,500 feet on Elk lake in the county of Grand Traverse. The defendants are real estate brokers at Muskegon. In February, 1926, they maintained a branch office at Traverse City, of

which their agent, E. S. Anderson, had charge. On February 15, 1926, plaintiff gave Anderson as such agent a three days' option to purchase this property for the sum of $2,800 in cash and the assumption of a mortgage thereon of $2,700. On the 17th he and Anderson went to look at the land. It was then covered with from 18 to 24 inches of snow. The water in the lake was frozen. On their return to Traverse City, Anderson prepared, and plaintiff signed, the following:

"Feb. 17, 1926.

"In consideration of one hundred dollars ($100.00) which is to be held in escrow at the Traverse City State Bank of Traverse City, Michigan, I agree to place a deed properly executed describing that parcel of land known as the northeast fractional quarter of section 26, township 28 north, range 9 west, containing one hundred forty-three (143) acres of land more or less, according to the United States survey thereof, and abstract showing a merchantable title, in the same above mentioned bank on the following conditions—as soon as abstract has been approved by the attorneys of J. J. Fagan & Company of Muskegon, Michigan, that they will deliver to said bank an additional twenty-seven hundred dollars ($2,700.00) and assume a certain mortgage now against the property in the amount of twenty-seven hundred dollars ($2,700.00). Which comes due and payable April 10, 1928.

(Signed)   "JOHN A. COLEMAN."

This writing and the $100 in cash were then deposited in the bank named therein. A few days thereafter, a warranty deed to the defendants was executed by plaintiff and his wife and deposited in the bank, together with an abstract of title to the property. The abstract was forwarded to defendants and submitted by them to their attorneys, who, in a letter to them, made some objections to the sufficiency of the title as revealed therein. On March 2, 1926, defendants wrote plaintiff, calling attention to the defects pointed out by their attorneys and inclosing a blank affidavit

covering one of them. They wrote him again on March 8th, saying that they had written the mortgagee, who was threatening foreclosure, saying:

"I wrote her and told her that we were purchasing it, and asked her not to do anything until we had the title straightened out."

They wrote again on March 13:

"As soon as you have the title straightened out as per my previous letter, we will be ready to close the deal with you on your property, as I informed you before."

Further correspondence relative to the abstract followed. The interest due the mortgagee was arranged for by defendants. On September 2d, defendants wrote plaintiff, saying that as Anderson had not signed the written memorandum left at the bank there was "no agreement" to purchase on their part. On September 9th they wrote, declining to proceed with the deal.

On November 22, 1926, plaintiff filed the bill of complaint herein, to which was annexed the correspondence above referred to, praying for specific performance. Defendants answered, averring that the defects in the title had not been corrected, that no binding agreement to purchase had been made by them, and also alleging that "as the whole transaction was misrepresented to them" specific performance should not be decreed.

The plaintiff had decree, from which the defendants appeal.

1. Defects in the Title. The trial court found that the defects complained of had been corrected. They were not serious. It will serve no useful purpose to consider them specifically. We are in accord with his finding.

2. Nature of the Agreement. It does not seem to be seriously contended that the memorandum signed by the plaintiff and the correspondence which followed do

not constitute a binding agreement on the part of both parties for the purchase and sale of the property. We will not further consider it.

3. Misrepresentation. There is much dispute between Anderson and the plaintiff as to what the latter said when they visited the property. Anderson testified that plaintiff said "two-thirds of the property was high" and that he fixed his valuation on such statement. It appears that he also talked with Frank Samuels, a farmer living near the lake, as to the location of the lines and the condition of the shore. Samuels testified:

"Then he asked me about the bathing beach and I told him the bathing beach in front of the lot was good. That is, in front of this thirty-five or forty rods. He asked me about the other point and I says, 'It is sand, but I don't know what is under it and the rest of the property there is low and swampy.' That was about the end of our conversation. They turned and went away. The description of the property that I gave him was correct. That was all they asked me. He didn't say anything about the length of the frontage. The conversation was not over five or ten minutes."

The plaintiff denied that he stated other than an estimate of the length of the shore line or its condition. The trial court found:

"The court is convinced that no material misrepresentations or fraud was practiced by the plaintiff."

He heard and saw the witnesses, and with his conclusion we agree. It is significant that, although one of the defendants had visited the property a considerable time before their letters declining to perform were written, no reference to this claim of defense was then made by them.

4. It is urged that specific performance should not be decreed; that plaintiff should be relegated to an action at law for recovery of his damages. We have

here a contract, voluntarily entered into, and no sufficient proof to justify a finding that it will be unconscionable or unjust to enforce it.    The value of such property is more or less speculative.    That it may now have less value than defendants estimated it had when the contract was entered into does not justify a refusal to specifically enforce it.

The decree is affirmed, with costs to plaintiff.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, MCDONALD, and POTTER, JJ., concurred.